IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HOME TRUST MORTGAGE COMPANY,

        Plaintiff,

vs.                                                          No. CIV 97-1453 BB/LFG

BANK OF NEW MEXICO, BANK
OF ARIZONA, MICHAEL BOWEN
and JEFF WALTON,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO DISQUALIFY STRATTON & CAVIN, P.A.

THIS MATTER came before the Court on Defendant Bank of New Mexico's Motion to Disqualify Stratton & Cavin, P.A., attorneys for Plaintiff Home Trust Mortgage Company ("Home Trust"). In accord with the district's motion practice rule, the motion, memorandum, and response were simultaneously filed [Docs. #52, 53 and 54]. Oral argument is not necessary. This matter may be resolved based on the parties' submissions.

Bank of New Mexico ("BNM") claims that Home Trust's attorney, Harold D. Stratton, Jr. ("Stratton"), is violating ethical standards by representing Home Trust in the face of an alleged conflict of interest. BNM's arguments may be summarized as follows:

(1) BNM has standing to raise the conflict issue even though Stratton never represented it;

(2) Stratton had an attorney-client relationship with BNM's employee at the time he undertook to represent Home Trust;

(3) even if that attorney-client relationship had previously ended, Stratton's representation of Home Trust in this case is materially adverse to BNM's employee, Stratton's former client, and

involves the same or substantially related matters; and,

(4) BNM did not unduly delay in filing the motion to disqualify.

Due to the Court's resolution of other issues, there is no need to discuss the standing issue.

### Attorney-Client Relationship

BNM seeks to portray this case as one involving the representation of a current client against the interests of another current client, a situation that would virtually compel the Court to disqualify Stratton.  See Terrebonne, Ltd. of California v. Murray, 1 F.Supp. 2d 1050, 1067 (E.D. Cal. 1998). That, however, is not the situation.  This action arises out of claims that BNM wrongfully lured away Home Trust's key employees who took with them large numbers of customers and mortgage loans that rightfully belonged to Home Trust.  One of the employees allegedly lured away and hired by BNM was a Ms. Zintak ("Zintak").  Stratton previously represented Zintak in an employment dispute involving a prior employer named Guild.  The Zintak-Guild litigation ended on September 30, 1996, when a stipulation of dismissal was entered on Guild's lawsuit.  Upon completion of the litigation, Stratton sent Zintak a formal notice advising her as follows: "[by] this letter, we also confirm that we no longer represent you as your counsel on any matters and that all matters upon which we previously represented you have now terminated."  The present lawsuit was not filed until November 12, 1997, and is based on events that are alleged to have transpired during the first few months of 1997, well after the Guild lawsuit was resolved.  It is clear, therefore, that Stratton was not representing Home Trust in this action while he still represented Zintak, BNM's employee, in the Guild lawsuit.

BNM argues that Zintak and Stratton had a continuing attorney-client relationship that did not end when the Guild lawsuit was concluded.  In support of that assertion, BNM points to various statements made by Zintak, referring to a "personal" and "professional" relationship between her and

Stratton of some twelve or thirteen years' duration.  BNM also argues that Zintak objected to Stratton terminating the representation and to Zintak's concerns that there was a conflict of interest.  Stratton, on the other hand, filed an affidavit indicating that Zintak would occasionally consult him about employment matters, but none of these conversations, other than the Guild lawsuit, resulted in legal representation or in payment to his firm and that there was no continuing "captive attorney" relationship between him and Zintak.

Based on a review of the arguments and authorities, the Court concludes that BNM's evidentiary submissions are inadequate to establish an attorney-client relationship between Stratton and Zintak which continued past the termination of the Guild action.  Compare, for example, Manoir-Electroalloys Corp. v. Amalloy Corp., 711 F. Supp. 188, 194 (D. N.J. 1989)(law firm's client remained a client even though no specific work had been done recently; a pattern of repeatedly providing legal services over a number of years with respect to a number of matters supported a finding of a continuing attorney-client relationship, especially where the law firm itself encouraged such a relationship).  Rather, in this case, Stratton represented Zintak in a matter, the matter was concluded, and the attorney-client relationship ended at that point.

### Present Action Vis-a-Vis a Past Client

It is clear that Zintak is Stratton's former client.[1]  Nonetheless, Stratton may still be precluded from representing Home Trust if the current litigation involves a matter that is the same or substantially related to Stratton's prior representation of Zintak and Home Trust's interests are materially adverse to Zintak.  See Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1384 (10th Cir.

---

[1] Another of BNM's employees, Ms. Lawrence, is in the same position as Zintak concerning former representation by Stratton in the Guild lawsuit.  Because the circumstances are the same, the Court will not discuss Lawrence's situation separately.  The Zintak discussion applies to Lawrence as well.

1994). To determine whether this litigation is the same or substantially related to the prior Guild lawsuit, it is necessary to compare the facts of each case, rather than simply examining the legal claims made in each lawsuit. Id. The underlying question is whether Stratton's subsequent representation of Home Trust can be justly regarded as a changing of sides in the matter in question. Id.

The Guild lawsuit involved the following facts:

(1) Guild hired Zintak away from a prior employer, paying her a "pipeline buy out" for loans that were not yet closed and making a number of promises concerning her potential income as a Guild employee;

(2) Guild had Zintak sign a promissory note to repay the pipeline buy out if she did not remain employed with Guild for at least a year;

(3) Guild's promises concerning Zintak's potential income were not fulfilled; and

(4) Zintak left Guild before the one-year period expired, thus triggering a lawsuit by Guild on the promissory note, as well as counterclaims by Zintak.

The present lawsuit, on the other hand, concerns accusations that BNM raided Home Trust assets and employees by hiring away most of Home Trust's key personnel and by improperly obtaining mortgage loans that rightfully belonged to Home Trust.

Zintak's employment with Guild, the subsequent dispute that arose, and the circumstances under which she left that employment, are not involved at all in the current lawsuit. Moreover, the Guild lawsuit involved no allegations of improper transfer of loans or customers in connection with Zintak's change of employment. The most that can be said is that the two lawsuits are related because they both arose in the context of hiring practices in the mortgage industry.

Here, BNM argues that Zintak's personal policies and practices with respect to her change of employment are involved in both cases. The Court disagrees. Zintak's general attitude or her proclivity for changing employers is not an important part of the current lawsuit, if it is relevant at all. The issues to be decided in the present case revolve around claims of enticement of employees and alleged improper transfers of loans and customers. The fact that Zintak is one of the employees who was allegedly lured away does not make this lawsuit substantially related to the Guild lawsuit, which, as previously indicated, involved a different employer and different factual circumstances.

BNM argues that Stratton obtained confidential information from Zintak during the course of his representation. The Court finds, however, that any information gained by Stratton during his representation of Zintak, such as the fact that she is a single parent, her reasons for leaving her employment with Guild, or the nature of a "pipeline buy out" is either irrelevant or at most tangentially relevant to the current lawsuit, or is not truly confidential information at all that can be used to Zintak's detriment. For all of these reasons, the Court concludes that BNM's motion is not well-taken and that Stratton's' disqualification on the grounds that he formerly represented Zintak will be denied.

## Delay in Investigating and Filing the Motion

At her deposition, Zintak testified that she made Defendant Walton aware of her allegations of a conflict sometime in June or July of 1997. BNM's attorneys became aware of Zintak's allegations of conflict at a subsequent time. The motion to disqualify was filed in late May 1998.

BNM argues that it did not become aware of the specific facts justifying disqualification until the day before Zintak's deposition and blames Stratton for failing to recognize the conflict or for denying that a conflict existed. However, BNM was free to follow up on Zintak's allegations and find

out if there was a factual predicate to support the assertions.

At this stage, discovery is under way and BNM will be seriously prejudiced if disqualifica-tion is allowed. Furthermore, as the previous discussion demonstrated, if there is a conflict of interest, it is not immediately apparent and its impact on Zintak, who is not a party to this lawsuit, is uncertain at best. Therefore, disqualification will be denied on the additional ground that BNM delayed the filing of this motion and that the uncertainty concerning Stratton's' status interfered with and delayed the orderly processing of this case, all to Home Trust's detriment.

## **Attorney Fees**

When the issue concerning the alleged conflict of interest arose, the trial Court stayed merits discovery, but allowed the parties to pursue discovery relating to the conflict. The Court announced that if it ultimately determined that the disqualification motion was not well-taken, then fees and/or sanctions would be assessed. (Zintak deposition, p. 22, lines 14-17). However, an in-depth review of the motion shows that it was not frivolous, nor does the Court believe it was pursued for any improper purpose.

Thus, the Court believes that sanctions are inappropriate. Each side should bear its own costs and fees.

*/s/ Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

COUNSEL FOR PLAINTIFF:
Harold D. Stratton, Jr., Esq.
Stephen D. Ingram, Esq.
Brian James Pezzillo, Esq.

COUNSEL FOR DEFENDANTS:
Phil Krehbiel, Esq.
David W. Peterson, Esq.